**TWENTIETH CENTURY
FOX FILM CORP.**

v.

**WARNER BROS. ENTM'T, INC. et al.**

**Case No. CV 08–00889 GAF (AJWx).**

United States District Court,
C.D. California.

Dec. 24, 2008.

---

Casondra K. Ruga, Louis A. Karasik, Peter Edward Masaitis, Samuel C. Taylor, Alston and Bird LLP, Los Angeles, CA, Jason D. Rosenberg, Lisa Gilford, Alston and Bird LLP, Atlanta, GA, Jason M. Sneed, Alston and Bird, Charlotte, NC, for Twentieth Century Fox Film Corp.

Alisa Morgenthaler Lever, Lisa M. Zepeda, Christensen Fink Jacobs Glaser Weil & Shapiro, Carter Richard Batsell, Laura A. Seigle, Steven A. Marenberg, Irell and Manella, Kevin J. Leichter, Patricia L. Glaser, Scott E. Gizer, Glaser Weil Fink Jacobs and Shapiro, Los Angeles, CA, for Warner Bros. Entm't, Inc. et al.

## ORDER RE: CROSS–MOTIONS FOR SUMMARY JUDGMENT

GARY ALLEN FEESS, District Judge.

### A. INTRODUCTION

Plaintiff Twentieth Century Fox Film Corp. ("Fox") has sued defendants Warner Brothers Entertainment, Inc., WB Studio Enterprises, Inc., and Warner Brothers Pictures (collectively, "Warner Brothers") for copyright infringement, interference with contract, and breach of contract. Fox seeks to enjoin the scheduled March 6, 2009 release of Warner Brothers' big-budget comic-book feature, "Watchmen," and also seeks an accounting of profits, declaratory relief, actual or statutory damages, and punitive damages. Presently before the Court are the parties' cross-motions for summary judgment and summary adjudication. Fox moves for summary judgment on its copyright infringement claim and seeks partial summary judgment on the issues of willful infringement and Warner Brothers' implied waiver defense. Warner Brothers likewise moves for summary judgment on Fox's copyright infringement claim, and seeks also to summarily adjudicate the issue of a contractual cap on the amount of compensatory damages to which Fox is entitled.

At the hearing on these motions, the Court advised the parties that it had tentatively concluded that disputed issues of fact preclude a grant of summary judgment for either party. Both sides, however, argued that resolution of the lawsuit ultimately turns on the interpretation of contract terms, a task that is the responsibility of the Court. Having further reviewed the record and the arguments of the parties, the Court concludes that the parties are correct and that the issues presented for summary adjudication can be resolved through the pending motions. The Court is presently in the process of preparing a detailed order setting forth the Court's ruling and reasoning on all issues presented. However, because of the expedited schedule under which the parties are working, and because the motion picture at the center of the dispute is scheduled for release in 72 days, the Court has concluded that the parties would benefit from knowing how the Court will rule before the Court issues a final order. Accordingly, the purpose of this short order is to outline the Court's ruling on the critical issue to be resolved in the pending motions—whether Twentieth Century Fox has distribution rights in Watchmen. This is not a tentative ruling; rather, this is notice to the parties of how the Court intends to rule on that central issue.

## B. DISCUSSION

### 1. Course of Conduct

For many years, Fox was involved in a business relationship with Lawrence Gordon, whom Warner Brothers accurately characterizes as an "A–List" producer of important motion pictures. During the period of this business relationship, Gordon conducted business through a number of entities, including Lawrence Gordon Productions ("LGP"), Golar, Inc. ("Golar"), and various Largo entities. Regardless of the entity through which Gordon happened to be working at any given time, and regardless of the variations that existed in agreements made by the parties from time to time, the course of conduct between Gordon and Fox had one overriding characteristic and objective: Gordon would develop and produce motion pictures, and Fox was the anticipated distributor of those pictures. This fundamental aspect of Gordon's and Fox's relationship over the years is critical background to an understanding of the agreements now before the Court.

The relationship between the parties is reflected, for example, in Gordon's involvement in the Largo entities. In the late 1980s, Gordon, through Golar, entered into a joint venture known as Largo Entertainment with JVC Entertainment, Inc. and BDH, Inc., a group of attorneys who represented Gordon. The joint venture agreement provided that Largo Entertainment would develop pictures and would "cause" the pictures to be distributed. Gordon has testified that it was always understood that Largo Entertainment would not be a distributor and would need to enter into an agreement with a studio with distribution capacity to market its movies. To that end, Largo Entertainment entered into agreements with Fox under which Largo Entertainment, headed by Gordon, would develop motion pictures that would be distributed by Fox both domestically and in foreign markets ("Largo Agreements"). By way of the Largo Agreements, the Largo entities ultimately became involved in the "Watchmen" project that is at the center of the present dispute.

### 2. 1991 Quitclaim Agreement

In 1986, Fox purchased an option to acquire the rights to "Watchmen," and Fox exercised that option in 1990 by paying $320,000 for those rights. In 1991, through a quitclaim agreement, Fox conveyed its rights in "Watchmen" to Largo International, N.V. ("LINV"), a Largo entity effectively under the control of Gordon, while retaining a right to distribute the first "Watchmen" motion picture. Although the quitclaim agreement and the accompanying short form quitclaim indicated that Fox had the right to distribute the first "Watchmen" picture, the quitclaim also incorporated the Largo Agreements, though with the caveat that the quitclaim controlled in the event that any of its terms conflicted with the terms of the Largo Agreements. Warner Brothers contends that, because LINV was not obligated under the quitclaim agreement or the Largo Agreements to produce a "Watchmen" picture, and indeed, did not produce one, Fox forever lost whatever distribution rights it may have had in the "Watchmen" project. In short, Warner Brothers contends that Fox's rights in "Watchmen" depended entirely on LINV's conduct—an argument belied by the parties' subsequent course of conduct.

### 3. 1994 Settlement & Release Agreement & Turnaround Notice

Some time before 1994, Gordon made the decision to withdraw from Largo Entertainment and to dissociate himself from the Largo entities. He resigned from his post as chairman and chief executive offi-

cer of Largo Entertainment in November 1993. When Gordon withdrew, he acquired, through Golar, whatever interest LINV had in "Watchmen" at the time. In correspondence between Gordon and Fox, "Watchmen" was later listed as an "LGP limbo project" and was one of the projects encompassed within a "Settlement and Release Agreement" executed by Gordon and Fox in 1994. Among other things, the Settlement and Release Agreement obligated the parties to execute a "Turnaround Notice," which placed the "Watchmen" project in perpetual turnaround and granted Gordon the exclusive right to acquire all of Fox's right, title, and interest in the project by paying a "buy-out price." Plainly, the Turnaround Notice acknowledged that Fox had rights in the "Watchmen" property, that Gordon either owned no rights or owned less than all of them, and that Gordon could acquire all the rights in the project, but only by paying for them. Moreover, the agreement contained a "changed elements" term that obligated Gordon, at any time prior to the payment of the buy-out price, to present the project to Fox whenever a changed element was introduced into the project. Gordon has never acquired Fox's rights in the project because he never paid the buy-out price, nor has he honored the changed elements term since 2005 even though numerous changes have been made in the project since then.[1]

■ Warner Brothers argues that, with respect to "Watchmen," the provisions of the Settlement and Release Agreement and the Turnaround Notice make no sense because Fox did not own any rights in "Watchmen" at the time of execution, and therefore had no rights to place in turnaround. For example, Warner Brothers' expert explains that a turnaround agreement is necessary only when the prospective seller owns or controls rights in property that a third party requires to produce a motion picture based on that property. He opines that "[t]hat was not the case here" because Fox owned no rights in "Watchmen" based on the 1991 quitclaim agreement. Likewise, one of Gordon's attorneys, Thomas Hunter, testified at his deposition that, had he known of the prior agreements between Gordon and Fox (even though his law firm was involved in the negotiation of those agreements and is on notice of their terms), he would not have negotiated the Turnaround Notice on Gordon's behalf because the agreement was not necessary. These hindsight arguments not only seek to vary the terms of the Settlement and Release Agreement, but also seek to nullify the clear understanding reached between extremely sophisticated parties. As a result, they run contrary to the objective theory of contracts, *Cedars–Sinai Med. Ctr. v. Shewry*, 137 Cal.App.4th 964, 41 Cal.Rptr.3d 48, 60 (2006), and the long-standing principle, codified in the California Civil Code, that a

---

1. Gordon's testimony regarding the facts, circumstances, and events surrounding the negotiation of the 1994 agreements would have been of assistance to the Court in evaluating the objectives of the parties at that time. However, Gordon refused to testify on that subject during his deposition because he supposedly could not separate what he knows based on his own recollection from what he learned from counsel. Gordon's counsel therefore asserted the attorney/client privilege and instructed Gordon not to answer any questions on the subject. The Court takes a dim view of this conduct and questions whether the assertion of the privilege was proper. Moreover, the assertion of the privilege does have a consequence: having now reached a decision based on the record before it, the Court will not, during the remainder of this case, receive any evidence from Gordon that attempts to contradict any aspect of this Court's ruling on the copyright issues under discussion.

court should not construe contractual provisions in such a way that would nullify those provisions, Cal. Civ.Code §§ 1643, 3541.[2]

 In the Court's view, Gordon's agreement to and execution of the Turnaround Notice indicates a clear understanding that Fox owned important rights in "Watchmen," including, at the very least, a distribution right, and that Gordon was required to comply with the terms and conditions of the buy-out if he wanted to acquire those rights. Because Gordon never paid the buy-out price, he never acquired Fox's rights in "Watchmen," and those rights therefore remain with Fox. Moreover, nothing in any later agreement altered or terminated Fox's ownership interest. In particular, Warner Brothers exercised its option to acquire Gordon's rights *after* being placed on notice of Fox's claim and having received the documentation upon which this Court bases its ruling. Thus, Warner Brothers cannot argue that its interest in "Watchmen" takes priority over Fox's interest.

## C. CONCLUSION

Accordingly, the Court concludes that Fox is entitled to summary judgment on its copyright infringement claim because Fox owns a copyright interest consisting of, at the very least, the right to distribute the "Watchmen" motion picture. A longer, more detailed order is forthcoming and will be entered in the near future. Given the Court's determination that Fox owns a distribution right, the parties may wish to turn their efforts from preparing for trial to negotiating a resolution of this dispute or positioning the case for review. In the meantime, the parties are **ORDERED** to attend a status conference on *Monday,*

*December 29, 2008 at 11:00 a.m.* to determine how this case will proceed.

**IT IS SO ORDERED.**

---

2. "[S]tate law controls issues of contractual interpretation, including agreements that pertain to copyrighted material, unless state law interferes with federal copyright law or policy." *Gardner v. Nike, Inc.,* 279 F.3d 774, 781 n. 5 (9th Cir.2002).